JOHN M. NEUKOM (SBN 275887)
jneukom@debevoise.com
DANIEL A. SILVERMAN (SBN 319874)
dasilverman@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
650 California Street
San Francisco, California 94108
Telephone: (415) 738-5700

RYAN K. IWAHASHI (SBN 284766)
ryan@gishpllc.com
THOMAS J. PARDINI (SBN 313401)
tom.pardini@gishpllc.com
**GISH PLLC**
50 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 630-2000

ANDREW D. GISH (*pro hac vice forthcoming*)
andrew@gishpllc.com
MICHAEL M. POWELL (*pro hac vice forthcoming*)
michael@gishpllc.com
**GISH PLLC**
41 Madison Avenue, Floor 31
New York, New York 10010
Telephone: (212) 518-7380

*Attorneys for Plaintiff*
*Advantest Test Solutions, Inc.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ADVANTEST TEST SOLUTIONS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>AEM HOLDINGS LTD., a Singapore corporation; AEM SINGAPORE PTE. LTD., a Singapore corporation; and AEM AMERICAS, INC., a California corporation,<br><br>Defendants. | CASE NO. '25CV2604 JES BJW<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Advantest Test Solutions, Inc. ("Advantest") alleges against Defendants AEM Holdings Ltd. ("AEM Holdings"), AEM Singapore Pte. Ltd. ("AEM Singapore"), and AEM Americas, Inc. ("AEM Americas," and collectively with AEM Holdings and AEM Singapore, "AEM") as follows:

## INTRODUCTION

1. This is a civil action for infringement of U.S. Patent No. 11,674,999 ("the '999 Patent") and U.S. Patent No. 12,320,841 ("the '841 Patent," and collectively with the '999 Patent, "the Asserted Patents").

2. Through this action, Advantest seeks to vindicate its rights to valuable technology that was developed by Advantest engineers under the direction of Advantest executives using Advantest-provided materials and resources. This technology was subsequently smuggled out by a disloyal Advantest executive who is now AEM Holdings's Chief Executive Officer. AEM commercialized this ill-gotten technology, and its decision to "knock off" rather than to innovate has resulted in significant injury to Advantest, which it seeks to remedy through this litigation.

## THE PARTIES

3. Plaintiff Advantest Test Solutions, Inc. is a Delaware corporation headquartered in Lake Forest, California.

4. Defendant AEM Holdings is, on information and belief, a Singapore corporation.

5. On information and belief, Defendant AEM Singapore is a Singapore corporation and Defendant AEM Americas is a California corporation headquartered in San Diego, California. Both are wholly owned subsidiaries of AEM Holdings.

## JURISDICTION AND VENUE

6. This is a civil action for infringement of U.S. Patent No. 11,674,999 and U.S. Patent No. 12,320,841 under the patent laws of the United States, 35 U.S.C. § 101 *et seq*.

1

COMPLAINT FOR PATENT INFRINGEMENT

7. This Court has subject matter jurisdiction over the claims alleged in this action because this action arises under the laws of the United States, including 35 U.S.C. § 101 *et seq.*

8. This Court has personal jurisdiction over each of AEM Holdings, AEM Singapore, and AEM Americas because each has committed acts within this district giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over it would not offend traditional notions of fair play and substantial justice. Each of AEM Holdings, AEM Singapore, and AEM Americas, directly and through subsidiaries or intermediaries, has committed and continues to commit acts of infringement in this district by, among other things, making, using, importing, offering to sell, and/or selling products that infringe the Asserted Patents. Each of AEM Holdings, AEM Singapore, and AEM Americas further, on information and belief, has substantial, continuous, and systematic contacts with this state; has solicited business in, transacted business within, and attempted to derive financial benefit from residents of California on a substantial and not isolated basis; and enjoys substantial income from infringement in this state. AEM Americas and AEM Holdings, on information and belief, each maintain a regular and established place of business in this state, including by maintaining employees in this state, such as Samer Kabbani, AEM Holdings's CEO and a California resident, and including by, in the case of AEM Americas, maintaining corporate headquarters in this state.

9. Venue is proper in this Court under 28 U.S.C. § 1400(b) because AEM Americas, a California corporation headquartered in San Diego, resides within this district, and AEM Holdings and AEM Singapore are foreign corporations and therefore may be sued in any judicial district in which they are subject to personal jurisdiction, which includes this district.

## BACKGROUND

10. Advantest Corporation, the corporate group that that includes Advantest, is a world leader in the development, design, and manufacture of equipment used to

test semiconductors—the building blocks of modern electronic devices like smartphones, personal computers, electrical appliances, and motor vehicles.

11. Semiconductors are complex devices that utilize nanometer-scale circuits, meaning that even the smallest manufacturing issues can cause outsize operating problems. To remedy this, semiconductor manufacturers exhaustively test their devices (each in this context, a "device under test" or "DUT") throughout the manufacturing process. This includes conducting "functional tests" to ensure that the DUT carries out its intended function under different conditions, "timing tests" to confirm that the DUT is operating at the speed expected, and "electrical characteristic tests" that test, for example, whether, when current is passed through the DUT, the current that leaks out is within a specified range. Such testing must be highly accurate to verify the quality, performance and reliability of each DUT. To conduct such testing, companies use automated testing equipment.

12. Thermal control technology is a core aspect of automated testing equipment. Depending on the specifics of the DUT and the corresponding test conditions selected, the testing system's temperature can fluctuate (sometimes wildly, depending on the needs of the customer). Thermal technology helps manage and control the temperature of a test system and of the device being tested, increasing the accuracy of the test and protecting the integrity of the semiconductor being tested.

**KABBANI DEVELOPS WAFER ATI TECHNOLOGY FOR ADVANTEST**

13. From 2019 through 2021, Samer Kabbani served as Executive Vice President, Business Development at Advantest. Kabbani was one of Advantest's highest-ranking executives, and oversaw the development of its thermal products, including a product called an "active thermal interposer" (or "ATI"), which uses novel thermal technology to more efficiently and effectively test DUTs.

14. Advantest's original ATI product was targeted at "system level test" (or "SLT"), which evaluates how a DUT (in this instance, a finished chip) will operate in its final user environment, *i.e.*, integrated within its end-user hardware. An SLT

platform simulates a DUT's end-use environment by placing the DUT in a socket on a customized test board, which operates as if the DUT were installed in its end-use application (for example, a smartphone or laptop). The tester then operates the DUT under a variety of operating and environmental conditions to ensure that it meets specified requirements of function, timing, and electrical characteristics.

15. Advantest's ATIs effectively regulated DUT temperature by embedding both heaters and temperature sensors into a customized ceramic "interposer" placed in thermal contact with a DUT during testing. Depending on the needs of the specific DUT, the interposers could include multiple thermal zones for selectively controlling the temperature of different portions of the DUT. By controlling the flow of current into the heaters and monitoring temperature feedback from the temperature sensors, Advantest's ATIs could adjust and monitor DUT temperatures far more precisely than previously available thermal systems.

16. Advantest's customer base was impressed by the ATIs, which quickly found favor with one major customer in particular, opening up a new revenue stream and burnishing Advantest's reputation for manufacturing innovative and high-quality test products.

17. In late 2019, Kabbani proposed a novel expansion of Advantest's ATI technology for precise thermal control during "wafer test" (also known as "wafer probe"), a testing process for evaluating individual semiconductor "dies" on a silicon wafer before the wafer is "diced" into individual chips. This technology would place a large circular ceramic interposer with embedded heaters and temperature sensors against the backside of a wafer, while probe pins contacted electrical connections on the front side of the wafer to perform testing. In conjunction with an adjacent supercooled "cold plate," the system would selectively control the temperature of various thermal zones on the wafer (*e.g.*, individual die or specific regions of the wafer) to more precisely control DUT thermals during test.

18. In December 2019, Kabbani and an Advantest Engineering VP traveled to Böblingen, Germany, where they presented the idea to Advantest's German affiliate. The idea was memorialized in a slide deck, and all agreed that the idea was promising and should be pursued further.

19. To that end, Kabbani led the project (eventually known as "wafer probe ATI" or "wafer ATI") in the following months and worked extensively on the technology, completing preparation of technical specifications and a proposed system architecture by January 2020 and working with the Advantest sub-suppliers from the ATI project to produce a sample device. Kabbani also advocated for the project outside of the engineering department, advising Advantest's business development and customer teams that his "next obsession is Wafer Probe."

20. Kabbani and his team further surveyed the current market for wafer ATI products, calculated margins, and even identified specific customers to target. In the spring of 2020, Kabbani and Advantest's now-CTO presented the concept to Advantest Corporation's board, which approved funding to commercialize the technology.

21. Kabbani and his team immediately put that funding to use, continuing to refine the product and setting a goal for the "final stage" of the project by September 2020. They also prepared statements of work for potential manufacturers.

22. Kabbani's role on the wafer ATI project ended on July 15, 2020, however, when Advantest placed Kabbani on administrative leave. This decision came after an internal investigation revealed that Kabbani had slipped his secret side-business, Lattice Technologies, Inc. ("Lattice")—of which he was, unbeknownst to Advantest, an owner and CEO—into the Advantest supply chain. Kabbani had personally directed Advantest supply contracts toward Lattice—including the manufacturing of the ATI. To obscure Lattice's involvement, Kabbani had hired an engineering company (run by a personal friend) as an intermediary between Advantest and Lattice, intending that it would, in his words, act as a "veil."

23. Kabbani's administrative leave—and his Advantest employment—abruptly came to an end mid-investigation, in August 2020, when AEM solicited Kabbani to join it as its Chief Technology Officer. AEM then purchased Lattice, presumably to gain access to the ATI technology Lattice manufactured under contract for Advantest. Advantest subsequently pursued claims against both Kabbani and AEM in arbitration, eventually receiving a $20 million payment from AEM to settle the dispute.[1]

24. Following Kabbani's departure, Advantest filed a provisional patent application covering the wafer ATI technology on November 19, 2020 (Provisional App. No. 63/115,813 ("the '813 Provisional")). The applications that later issued as the '999 Patent and the '841 Patent claim priority to that provisional application.

25. Specifically, U.S. Patent Application No. 17/725,164, listing as inventors Samer Kabbani, Paul Ferrari, Ikeda Hiroki, Kiyokawa Toshiyuki, Gregory Cruzan, and Karthik Ranganathan, and entitled "Wafer Scale Active Thermal Interposer for Device Testing," was filed on April 20, 2022, and claims priority to the '813 Provisional. It duly and legally issued as the '999 Patent on June 13, 2023. The '999 Patent is attached hereto as Exhibit A.

26. The '999 Patent relates to "a wafer thermal interposer (TI) layer operable to contact a second surface of the wafer and operable to selectively heat areas of the wafer, and a cold plate disposed under the wafer TI layer and operable to cool the wafer." ('999 Patent, Abstract.)

27. Advantest is the owner of all rights, title, and interest in and to the '999 Patent, with the full and exclusive right to bring suit to enforce the '999 Patent, including the right to recover for past infringement.

28. AEM does not have a license to the '999 Patent, either expressly or implicitly, and does not enjoy or benefit from any rights in or to the '999 Patent.

---

[1] The parties were permitted to, and did, make public certain terms of this settlement.

29. All claims of the '999 Patent claim patent-eligible subject matter and are valid and enforceable.

30. All claims of the '999 Patent are entitled to the filing date of the '813 Provisional.

31. U.S. Patent Application No. 17/528,002, listing as inventors Samer Kabbani, Paul Ferrari, Ikeda Hiroki, Kiyokawa Toshiyuki, Gregory Cruzan, and Karthik Ranganathan, and entitled "Wafer Scale Active Thermal Interposer for Device Testing," was filed on November 16, 2021, and claims priority to the '813 Provisional. It duly and legally issued as the '841 Patent on June 3, 2025. The '841 Patent is attached hereto as Exhibit B.

32. The '841 Patent also relates to "a wafer thermal interposer (TI) layer operable to contact a second surface of the wafer and operable to selectively heat areas of the wafer, and a cold plate disposed under the wafer TI layer and operable to cool the wafer." ('841 Patent, Abstract.)

33. Advantest is the owner of all rights, title, and interest in and to the '841 Patent, with the full and exclusive right to bring suit to enforce the '841 Patent, including the right to recover for past infringement.

34. All claims of the '841 Patent claim patent-eligible subject matter and are valid and enforceable.

35. All claims of the '841 Patent are entitled to the filing date of the '813 Provisional.

36. AEM does not have a license to the '841 Patent, either expressly or implicitly, and does not enjoy or benefit from any rights in or to the '841 Patent.

## KABBANI BRINGS ADVANTEST'S PATENTED WAFER ATI TECHNOLOGY TO AEM

37. Advantest hoped that the conclusion of the arbitration against Kabbani and AEM would put an end to his and AEM's malfeasance. It didn't.

38. In 2024, three years after Kabbani's departure from Advantest, the United States Patent and Trademark Office began issuing patents to AEM parroting the details of Advantest's wafer ATI technology but giving it a new name: a "thermal control wafer" ("TCW"). Each of these patents was assigned to AEM Singapore and named Kabbani (and one or more of the Lattice engineers to whom he had assigned Advantest projects during his tenure at Advantest) as an inventor.

39. The AEM patents fall into three families. <u>First</u>, U.S. Patent No. 12,013,432 ("the '432 Patent") (Exhibit C) was filed August 23, 2023, and issued June 18, 2024. <u>Second</u>, U.S. Patent No. 12,085,609 ("the '609 Patent") (Exhibit D) was filed August 23, 2023, and issued September 10, 2024; and was followed by its continuation, U.S. Patent Application No. 18/797,339 ("the '339 Application") (Exhibit E). Although the first and second families are formally distinct, they share an identical specification. <u>Third</u>, U.S. Patent No. 12,000,885 ("the '885 Patent") (Exhibit F) was filed December 20, 2023, and issued June 4, 2024; its continuation, U.S. Patent No. 12,259,428 ("the '428 Patent") (Exhibit G), was filed April 22, 2024, and issued March 25, 2025; and this was followed by its continuation, U.S. Patent Application No. 19/058,629 ("the '629 Application") (Exhibit H). Collectively, Advantest refers to these four patents and two applications as AEM's "Copycat Patents."

40. Like the Asserted Patents, AEM's Copycat Patents disclose a ceramic wafer with embedded heaters and temperature sensors divided into multiple thermal zones (this time called a TCW rather than an ATI). In conjunction with an adjacent cold plate, the TCW selectively controls the temperature of various thermal zones on the wafer (*e.g.*, individual die or specific regions of the wafer) to more precisely control DUT thermals during test.

41. Given the striking similarities between the subject matter of AEM's Copycat Patents and the wafer ATI project, and Kabbani's role in both, Advantest became concerned about the possibility that Kabbani had taken Advantest's patented wafer ATI technology with him to AEM, where he and AEM had continued to test and

commercialize it notwithstanding Advantest's ownership of the technology and the Asserted Patents.

42. That concern was heightened by industry reports indicating that AEM was marketing a wafer ATI product. For example, in its 2024 annual report, AEM trumpeted its "PX technology, targeting wafer probe" with supposed "potential to redefine wafer thermal control during probe," and indicated that AEM anticipated "launching evaluations at all three advanced node (sub-7nm) foundry suppliers by late 2025."

43. Advantest cannot conduct a direct analysis of AEM's products embodying this technology because semiconductor test is a secretive, business-to-business industry. Accordingly, AEM's products are not detailed in publicly available marketing documents and are sold only to semiconductor companies, and therefore they are not available on the open market for purchase and analysis.

44. However, given (i) the considerable effort and expense AEM has undertaken to file numerous patent applications relating to this technology; and (ii) industry reports confirming that AEM is marketing such products, Advantest has a reasonable basis to believe, and alleges, that AEM is using, offering for sale, and selling within the United States products that embody AEM's Copycat Patents (the "Accused Products"), which, on information and belief, include at least the combination of AEM TCWs with AEM's "MMP Multi Purpose Frame/Wafer Probe System," AEM's "KRONOS Inertial Sensor Wafer Probe System," and wafer probe testers manufactured by third parties, consistent with the disclosures of the Copycat Patents, within the United States.

45. Given the similarities between the technology described in the Copycat Patents and the Asserted Patents, it is virtually impossible to practice the Copycat Patents without also infringing the Asserted Patents. Accordingly, AEM's Accused Products infringe at least one claim of the '999 Patent and at least one claim of the '841 Patent.

# FIRST CLAIM FOR RELIEF
## (INFRINGEMENT OF THE '999 PATENT)

46. Advantest repeats and re-alleges the allegations set forth above as if repeated herein.

47. The United States Patent and Trademark Office fully and legally issued the '999 Patent on June 13, 2023.

48. AEM has been and is now directly infringing the '999 Patent in violation of 35 U.S.C. § 271(a) at least by making, using, selling, offering for sale, and/or importing into the United States the Accused Products, which practice one or more claims of the '999 Patent, including at least claim 1.

49. Claim 1 of the '999 Patent recites (brackets added):

**[1.pre]** A system for testing circuits of an integrated circuit semiconductor wafer, the system comprising:

**[1.a]** a tester system for generating signals for input to said circuits and for processing output signals from said circuits for testing said wafer;

**[1.b]** a test stack coupled to said tester system, said test stack comprising:

**[1.c]** a wafer probe for contacting a first surface of said wafer and for probing individual circuits of said circuits of said wafer;

**[1.d]** a wafer thermal interposer (TI) layer operable to contact a second surface of said wafer and operable to selectively heat areas of said wafer; and

**[1.e]** a cold plate disposed under said wafter TI layer and operable to cool said wafer;

**[1.f]** a thermal controller for selectively heating and maintaining temperatures of said areas of said wafer by controlling cooling of said cold plate and by controlling selective heating of said wafer TI later;

**[1.g]** a pin lift mechanism for displacing pins for lifting said wafer away from said wafer TI layer and wherein said cold plate and said wafer TI

        layer both comprise vertical alignment holes which are aligned with said pins for allowing said pins to pass through said cold plate and said wafer TI layer to lift said wafer.

50. The Accused Products infringe at least claim 1 of the '999 Patent. As set forth in the claim chart of Exhibit I, each recited element of claim 1 correlates with a disclosure set forth in the Copycat Patents and other AEM disclosures, suggesting that the Accused Products feature each element and thereby practice that claim.

51. On information and belief, AEM has had knowledge of the '999 Patent prior to the filing of the instant complaint, including because AEM Holdings's CEO, Samer Kabbani, is an inventor listed on the '999 Patent. As further evidence of AEM's knowledge of the '999 Patent, the face of AEM Singapore's issued Copycat Patents lists Advantest's '999 Patent as a reference cited by the applicant during prosecution. *See* Exs. C, D, F, G at 2.

52. AEM has committed infringing acts without authorization, consent, permission, or a license from Advantest.

53. On information and belief, AEM has been and is now indirectly infringing the '999 Patent in violation of 35 U.S.C. § 271(b) at least by (i) inducing its customers to purchase the Accused Products and/or by instructing, encouraging, implementing, and/or directing others how to use the Accused Products in ways that directly infringe the '999 Patent, including claim 1, through its education and promotion materials and support and service activities; and/or (ii) instructing, encouraging, and/or directing others how to use AEM TCWs in conjunction with wafer probe testers in ways that directly infringe the '999 Patent, including claim 1, through its education and promotion materials and support and service activities.

54. On information and belief, AEM has been and is now contributorily infringing the '999 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f). For example, AEM's TCWs constitute a material part of the inventions claimed in the '999 Patent, are specially made or adapted to infringe the '999 Patent, and are not staple articles or

commodities of commerce suitable for non-infringing use, as demonstrated by the evidence cited above and in Exhibit I.

55.   AEM's infringement is either literal or under the doctrine of equivalents.

56.   AEM's infringement of the '999 Patent has been and continues to be willful.  AEM has acted with knowledge of the '999 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '999 Patent.  AEM has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '999 Patent.  This objectively-defined risk was known or is so obvious that it should have been known to AEM.  AEM's infringement of the '999 Patent has been and continues to be willful, entitling Advantest to enhanced damages under 25 U.S.C. § 284.

57.   AEM's acts of infringement have caused damage to Advantest, and Advantest is entitled to recover from AEM the damages sustained by Advantest as a result of AEM's wrongful acts in an amount subject to proof at trial.

58.   AEM's acts of infringement have caused and, unless restrained and enjoined, will continue to cause irreparable injury and damage to Advantest for which there is no adequate remedy at law.

59.   This case is exceptional, entitling Advantest to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## SECOND CLAIM FOR RELIEF

**(INFRINGEMENT OF THE '841 PATENT)**

60.   Advantest repeats and re-alleges the allegations set forth above as if repeated herein.

61.   The United States Patent and Trademark Office fully and legally issued the '841 Patent on June 3, 2025.

62.   AEM has been and is now directly infringing the '841 Patent in violation of 35 U.S.C. § 271(a) at least by making, using, selling, offering for sale, and/or

importing into the United States the Accused Products, which practice one or more claims of the '841 Patent, including at least claim 1.

63. Claim 1 of the '841 Patent recites (brackets added):

**[1.pre]** A test system for testing circuits of an integrated circuit semiconductor wafer, the test system comprising:

**[1.a]** a test computer for testing said circuits by generating signals for input to said circuits, processing output signals from said circuits and generating a test result thereof;

**[1.b]** a wafer probe, coupled to said test computer, for contacting a first surface of said wafer and for probing individual circuits of said circuits of said wafer;

**[1.c]** a wafer thermal interposer (TI) layer operable to contact a second surface of said wafer and operable to selectively heat areas of said wafer, wherein said wafer TI layer comprises a plurality of resistive traces traversing said wafer TI layer and wherein said plurality of resistive traces are operable to selectively heat a plurality of zones of said wafer TI layer that correspond to said areas of said wafer;

**[1.d]** a cold plate disposed adjacent to said wafer TI layer and operable to cool said wafer; and

**[1.e]** a thermal controller for selectively heating and maintaining temperatures of said areas of said wafer during said testing by controlling cooling of said cold plate and by controlling selective heating of said plurality of resistive traces of said wafer TI layer.

64. The Accused Products infringe at least claim 1 of the '841 Patent. As set forth in Exhibit J, each recited element of claim 1 correlates with a disclosure set forth in the representative evidence, suggesting that the Accused Products feature each element and thereby practice that claim.

65. On information and belief, AEM has had knowledge of the '841 Patent prior to the filing of the instant complaint, including because AEM Holdings's CEO, Samer Kabbani, is an inventor listed on the '841 Patent. As further evidence of AEM's knowledge of the '841 Patent, the face of AEM Singapore's issued Copycat Patents lists Advantest's Application Publication No. 2022/0155364 (which later issued as the '841 Patent) as a reference cited by the applicant during prosecution. *See* Exs. C, D, F, G at 2.

66. AEM has committed infringing acts without authorization, consent, permission, or a license from Advantest.

67. On information and belief, AEM has been and is now indirectly infringing the '841 Patent in violation of 35 U.S.C. § 271(b) at least by inducing its customers to (i) purchase the Accused Products and/or by instructing, encouraging, implementing, and/or directing others how to use the Accused Products in ways that directly infringe the '841 Patent, including claim 1, through its education and promotion materials and support and service activities; and/or (ii) instructing, encouraging, and/or directing others how to use AEM TCWs in conjunction with wafer probe testers in ways that directly infringe the '841 Patent, including claim 1, through its education and promotion materials and support and service activities.

68. On information and belief, AEM has been and is now contributorily infringing the '841 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f). For example, AEM's TCWs constitute a material part of the inventions claimed in the '841 Patent, are specially made or adapted to infringe the '841 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence cited above and in Exhibit J.

69. AEM's infringement is either literal or under the doctrine of equivalents.

70. AEM's infringement of the '841 Patent has been and continues to be willful. AEM has acted with knowledge of the '841 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '841

Patent. AEM has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '999 Patent. This objectively-defined risk was known or is so obvious that it should have been known to AEM. AEM's infringement of the '841 Patent has been and continues to be willful, entitling Advantest to enhanced damages under 25 U.S.C. § 284.

71. AEM's acts of infringement have caused damage to Advantest, and Advantest is entitled to recover from AEM the damages sustained by Advantest as a result of AEM's wrongful acts in an amount subject to proof at trial.

72. AEM's acts of infringement have caused and, unless restrained and enjoined, will continue to cause irreparable injury and damage to Advantest for which there is no adequate remedy at law.

73. This case is exceptional, entitling Advantest to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## **PRAYER FOR RELIEF**

Based on the foregoing, Advantest respectfully requests the following relief:

a) A judgment that AEM has infringed at least one claim of each of the Asserted Patents in violation of 35 U.S.C. § 271;

b) A judgment awarding Advantest damages adequate to compensate for AEM's infringement of the Asserted Patents, in no event less than a reasonable royalty, including all pre-judgment and post-judgment interest;

c) A judgment awarding Advantest treble damages for any infringement found to be willful pursuant to 35 U.S.C. § 284;

d) An order and judgment enjoining further acts of infringement by AEM, which would further irreparably injure Advantest;

e) A judgment and order requiring AEM to provide an accounting and to pay supplemental damages to Advantest, including, without limitation, pre-judgment and post-judgment interest;

f) A declaration that this case is exceptional under 25 U.S.C. § 285 and a judgment awarding Advantest its attorneys' fees, costs, and expenses incurred in this action;

g) A judgment awarding Advantest any and all other relief to which Advantest may show itself to be entitled; and

h) A judgment awarding Advantest any other relief as the Court may deem just, equitable, and proper.

## JURY DEMAND

Advantest hereby demands a jury trial on all issues and claims so triable.

DATED: October 1, 2025

By: */s/ John M. Neukom*

JOHN M. NEUKOM (SBN 275887)
jneukom@debevoise.com
DANIEL A. SILVERMAN (SBN 319874)
dasilverman@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
650 California Street
San Francisco, California 94108
Telephone: (415) 738-5700

RYAN K. IWAHASHI (SBN 284766)
ryan@gishpllc.com
THOMAS J. PARDINI (SBN 313401)
tom.pardini@gishpllc.com
**GISH PLLC**
50 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 630-2000

ANDREW D. GISH (*pro hac vice forthcoming*)
andrew@gishpllc.com
MICHAEL M. POWELL (*pro hac vice forthcoming*)
michael@gishpllc.com
**GISH PLLC**
41 Madison Avenue, Floor 31
New York, New York 10010
Telephone: (212) 518-7380

*Attorneys for Plaintiff
Advantest Test Solutions, Inc.*