JOHN M. NEUKOM (SBN 275887)
john.neukom@davispolk.com
**DAVIS POLK & WARDWELL LLP**
900 Middlefield Road, Suite 200
Redwood City, CA 94603
Telephone: (650) 752-2000

RYAN K. IWAHASHI (SBN 284766)
ryan@gishpllc.com
THOMAS J. PARDINI (SBN 313401)
tom.pardini@gishpllc.com
**GISH PLLC**
50 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 630-2000

ANDREW D. GISH (*admitted PHV*)
andrew@gishpllc.com
MICHAEL M. POWELL (*admitted PHV*)
michael@gishpllc.com
**GISH PLLC**
41 Madison Avenue, Floor 31
New York, New York 10010
Telephone: (212) 518-2000

*Attorneys for Plaintiff*
*Advantest Test Solutions, Inc.*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADVANTEST TEST SOLUTIONS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>AEM HOLDINGS LTD., a Singapore corporation; AEM SINGAPORE PTE. LTD., a Singapore corporation; and AEM AMERICAS, INC., a California corporation,<br><br>Defendants. | CASE NO. 3:25-cv-02604-JES-BJW<br><br>**ADVANTEST'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Complaint Filed: October 1, 2025<br><br>Judge: James E. Simmons, Jr.<br>Action Filed: October 1, 2025<br><br>Hearing: March 11, 2026<br>Time: 1:30 p.m.<br>Courtroom: 4B |

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................1

II.   LEGAL STANDARD.........................................................................2

III.  ARGUMENT .....................................................................................3

    A.    Advantest's allegations are sufficient, especially given that the secrecy of the industry prevents it from obtaining the Accused Products. ...................................................................................................3

    B.    Advantest adequately pleads direct infringement...............................7

        1.    Advantest may properly rely on the AEM Copycat Patents to support infringement. ...........................................................7

        2.    Advantest's additional allegations regarding AEM's direct infringement are likewise adequate. ..........................................10

        3.    Advantest adequately pleads domestic acts of infringement under 35 USC § 271(a)...................................................................14

        4.    Advantest adequately alleges that each Defendant infringes. ..17

    C.    Advantest adequately pleads indirect infringement............................19

        1.    Advantest adequately pleads AEM customers' direct infringement. ...................................................................................19

        2.    Advantest adequately pleads contributory infringement through the absence of substantial non-infringing uses. ..........21

        3.    Advantest adequately pleads AEM's knowledge of the Asserted Patents and specific intent to induce infringement....22

    D.    Advantest adequately pleads willful infringement. ............................23

    E.    Leave to amend should be granted if this complaint is dismissed......25

IV.  Conclusion ......................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Abbott Point of Care v. Epocal, Inc.,*
  868 F. Supp. 2d 1310 (N.D. Ala. 2012)................................................................9

*AlexSam, Inc. v. Aetna, Inc.,*
  119 F.4th 27 (Fed. Cir. 2024) ...........................................................................20

*Anticancer, Inc. v. Leica Microsystems, Inc.,*
  No. 11-cv-2756-JMA, 2012 WL 12862585 (S.D. Cal. May 14, 2012)..................20

*Apollo Fin., LLC v. Cisco Sys., Inc.,*
  190 F. Supp. 3d 939 (C.D. Cal. 2016) ...............................................................16

*Arbmetrics, LLC v. Dexcom Inc.,*
  No. 18-cv-00134-JLS-KSC, 2019 WL 12473781 (S.D. Cal. Feb. 19, 2019).........24

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...........................................................................2, 3, 4, 17

*Askan v. Faro Techs., Inc.,*
  No. 6:23-CV-920-PGB-DCI, 2024 WL 3443416 (M.D. Fla. July 17, 2024)............6

*Atlas IP LLC v. Pac. Gas & Elec. Co.,*
  No. 15-CV-05469-EDL 2016 WL 1719545 (N.D. Cal. Mar. 9, 2016) ...................14

*Bell v. Twombly,*
  550 U.S. 544 (2007)...........................................................................................2, 4

*Benson Ave. Co. LLC v. ARRI Americas Inc.,*
  No. 2:24-cv-07209-SVW-RAO, 2025 WL 2684035 (C.D. Cal. Aug. 14, 2025) ....16

*Bot M8 LLC v. Sony Corp. of Am.,*
  4 F.4th 1342 (Fed. Cir. 2021) ...............................................................3, 5, 11

*Brain Life, LLC v. Elekta Inc.,*
  No. 10-cv-1539-LAB-BGS, 2011 WL 12816674 (S.D. Cal. July 19, 2011)..........20

*Carolina Cas. Ins. Co. v. Team Equip., Inc.,*
  741 F.3d 1082 (9th Cir. 2014) ..........................................................................12

*Celgard, LLC v. Shenzhen Senior Tech. Material Co.,*
  No. 19-cv-05784-JST, 2020 WL 7392909, at *5 (N.D. Cal. July 23, 2020)..........12

*Conformis, Inc. v. Zimmer Biomet Holdings, Inc.,*
  No. CV 19-1528-RGA, 2022 WL 1909386 (D. Del. June 3, 2022) .......................16

*Dawson Chem. v. Rohm & Haas,*
  448 U.S. 176 (1980)............................................................................................9

*DeSoto Cab Co. v. Uber Techs., Inc.,*
  No. 16-cv-06385-JSW, 2018 WL 10247483 (N.D. Cal. Sep. 24, 2018) ...............17

ii

*DeSoto v. Yellow Freight Sys., Inc.*,
    957 F.2d 655 (9th Cir. 1992) ..........................................................................................25

*E-Vision Optics, LLC v. Luxottica Grp. S.P.A.*,
    No. SA CV 23-02013-AB (SHKx), 2024 WL 1601853 (C.D. Cal. Mar. 8, 2024) .18

*Forest Labs., Inc. v. Abbott Labs.*,
    239 F.3d 1305 (Fed. Cir. 2001)..........................................................................................9

*Garrett v. TP-Link Rsch. Am. Corp.*,
    No. 20-CV-03491-SI, 2020 WL 5517202 (N.D. Cal. Sept. 14, 2020) ....................14

*H.R. Techs., Inc. v. Astechnologies, Inc.*,
    275 F.3d 1378 (Fed. Cir. 2002)........................................................................................25

*In re Am. Apparel S'holder Derivative Litig.*,
    No. CV 10-06576 MMM (RCx), 2012 WL 9506072 (C.D. Cal. July 31, 2012) ....18

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012)........................................................................................20

*In re iPhone Application Litig.*,
    No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sep. 20, 2011)................19

*In re Pac. Fertility Ctr. Litig.*,
    No. 18-cv-01586-JSC, 2019 WL 3753456 (N.D. Cal. Aug. 8, 2019) ....................18

*King Instruments Corp. v. Perego*,
    65 F.3d 941 (Fed. Cir. 1995)..........................................................................................9

*K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*,
    714 F.3d 1277 (Fed. Cir. 2013).................................................................................4, 5

*Munning v. Gap, Inc.*,
    No. 16-CV-03804-TEH, 2016 WL 6393550 (N.D. Cal. Oct. 28, 2016) ................18

*Nat. Alternatives Int'l, Inc. v. Creative Compounds*, LLC,
    No. 16-CV-02146-H-AGS, 2017 WL 11421891 (S.D. Cal. Mar. 15, 2017)...........22

*Nat'l Rifle Ass'n of Am. v. Vullo*,
    602 U.S. 175 (2024)..........................................................................................................3

*Network Congestion Sols., LLC v. AT&T Inc.*,
    108 F. Supp. 3d 246 (D. Del. 2015)..........................................................................5

*Newtonoid Techs., LLC v. Abbott Lab'ys,*
    No. 1:23-CV-02532 2024 WL 4213303 (N.D. Ill. Sept. 17, 2024) ........................14

*NOCO Co. v. Winplus N. Am., Inc.*,
    No. 8:23-cv-00269-DOC-DFM, 2025 WL 2427985 (C.D. Cal. July 16, 2025)......25

*Novartis Pharms. Corp. v. Alembic Pharms. Ltd.*,
    No. CV 22-1395-RGA, 2023 WL 6387975 (D. Del. Sept. 29, 2023) ..................5, 6

iii

*Novitaz, Inc. v. inMarket Media, LLC,*
No. 16-CV-06795-EJD, 2017 WL 2311407 (N.D. Cal. May 26, 2017)..................14

*Parity Networks, LLC v. Moxa Inc.,*
No. SACV 20-698 JVS(KESx), 2020 WL 6064636 (C.D. Cal. Sep. 11, 2020)......18

*Park v. Thompson,*
851 F.3d 910 (9th Cir. 2017) ................................................................12

*Power Density Sols. LLC v. United States,*
159 Fed. Cl. 208, 210 (2022) ......................................................4, 5, 9

*Resh, Inc v. Skimlite Mfg. Inc,*
666 F. Supp. 3d 1054 (N.D. Cal. 2023) ..................................................19

*Ricoh Co. v. Quanta Computer Inc.,*
550 F.3d 1325 (Fed. Cir. 2008)......................................................21, 22

*Rite-Hite Corp. v. Kelley Co.,*
56 F.3d 1538 (Fed. Cir. 1995)................................................................8

*Roberts v. Cty. of Riverside,*
No. EDCV 19-1877 JGB (SHKx), 2020 WL 3965027 (C.D. Cal. June 5, 2020) ...18

*Scripps Rsch. Inst. v. Illumina, Inc.,*
No. 16-CV-661 JLS (BGS) 2016 WL 6834024 (S.D. Cal. Nov. 21, 2016) ...........14

*Seoul Viosys Co. v. Feit Elec. Co.,*
No. 2:24-cv-04238-CV (AJRx), 2026 LX 30411 (C.D. Cal. Jan. 14, 2026) ...........25

*Skinner v. Switzer,*
562 U.S. 521 (2011)................................................................................2

*Slack v. Int'l Union of Operating Eng'rs,*
No. C-13-5001 EMC, 2014 WL 4090383 (N.D. Cal. Aug. 19, 2014).....................18

*Smith Interface Technologies, LLC, Plaintiff, v. Apple Inc.,*
No. 23-CV-1187 TWR (BGS), 2024 WL 6916566 (S.D. Cal. Aug. 5, 2024).........24

*Sound N Light Animatronics Co., LTD v. Cloud b, Inc.,*
No. CV 16-05271-GHK (JPRx), 2016 WL 7635950 (C.D. Cal. Nov. 10, 2016)....15

*Splunk Inc. v. Cribl, Inc.,*
662 F. Supp. 3d 1029 (N.D. Cal. 2023) ..................................................24

*Stasi v. Inmediata Health Grp. Corp.,*
501 F. Supp. 3d 898 (S.D. Cal. 2020)....................................................12

*Superior Indus., L.L.C. v. Thor Glob. Enters. Ltd.,*
No. CIV. 10-2524 MJD LIB, 2011 WL 601217 (D. Minn. Feb. 11, 2011).............10

*TeleSign Corp. v. Twilio, Inc.,*
No. CV 16-2106 PSG (SSx), 2016 WL 4703873 (C.D. Cal. Aug. 3, 2016) ..........11

iv

*Tetro LTD. v. Smart Trike MNF. PTE. LTD.*,
No. 1:22-CV-04938-LMM, 2023 WL 9898324 (N.D. Ga. Apr. 18, 2023)..............17

*Totes-Isotoner Corp. v. United States*,
594 F.3d 1346 (Fed. Cir. 2010)...................................................................23

*Yi-Ping Lin v. Transform Partners LLC*,
No. 18cv1933 DMS (KSC), 2019 WL 446403 (S.D. Cal. Feb. 4, 2019) ................14

**Statutes**

35 U.S.C. § 271(a)........................................................................................16

**Rules**

Fed. R. Civ. P. 8 .......................................................................................4, 11

Fed. R. Civ. P. 8(a)(2) ....................................................................................2

Fed. R. Civ. P. 12(b)(6) ..................................................................................2

ADVANTEST'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:25-cv-02604-JES-BJW

## I.      INTRODUCTION

Through its motion ("Mot."), AEM[1] seeks to exploit its participation in a highly secretive business-to-business industry to immunize itself against patent infringement lawsuits.  This is no hyperbole:  AEM argues that because its semiconductor testing equipment is unavailable on the public market, and Advantest is unable to purchase and inspect it, Advantest necessarily cannot allege direct infringement regardless of any other supporting facts in the Complaint.  AEM contends these same obstacles prevent Advantest from adequately alleging how a domestic act of infringement occurred, how each Defendant infringed, and how AEM induced infringement with any particular customer.  In other words, AEM touts that its infringement of Advantest's patents occurs behind closed doors.  If AEM's argument were accepted, that would create a get-out-of-infringement-free card—ensuring in effect that an infringer may not be sued if it successfully keeps its products out of the patentholder's hands.  AEM's position ignores common sense and case law explicitly holding otherwise, and this Court should reject it.

Advantest's allegations are more than adequate under the Rule 12 pleading standard of "notice" and "plausibility."  Across a detailed Complaint and extensive claim charts, Advantest describes the factual bases underlying its allegations of direct, indirect, and willful infringement.  Some of the factual support for Advantest's allegations is a close analysis of the AEM Copycat Patents that disclose AEM's infringement.  Nonetheless, AEM contends that Advantest is not permitted to cite the AEM Copycat Patents in order to close the gap in public information about the Accused Products, which contention is contrary to the case law.  And AEM furthermore relies on that incorrect premise to argue that Advantest's Complaint—if and only if the extensive allegations relating to the AEM Copycat Patents were disregarded—is inadequate.  But AEM ignores that Advantest need only "plausibly

---

[1] Capitalized terms have the meanings attributed to them in Advantest's complaint, ECF No. 1 ("Compl.").

allege" infringement at the pleading stage, not prove it, and whether Advantest has done so requires taking into account the secretive nature of the industry and the Accused Products.

AEM also cannot wave off the other allegations that support plausible inferences of indirect and willful infringement.  AEM argues incorrectly that Advantest merely recites the legal elements of these claims and omits specific supporting facts.  But that is a rewrite of the Complaint, which dedicates numerous paragraphs to the scheme whereby AEM Holdings's CEO, a former Advantest executive and named inventor on the Advantest Asserted Patents, "smuggled out" the technology covered by the Asserted Patents to AEM and then authored the AEM Copycat Patents disclosing AEM's infringement.  This is not a situation, as AEM implies, where the Court must analyze vague allegations of old demand letters to determine whether a plaintiff may have once provided "notice" of the patents to an otherwise unrelated defendant.  This is instead a case where AEM, having engaged in a contentious years-long dispute related to the named inventor on *both* Advantest's and AEM's patents, deployed the same technology as Advantest after recruiting and hiring that named inventor.  These facts and others support the plausible inference that AEM had notice of the Asserted Patents, and still proceeded with the specific and deliberate intent to infringe and induce infringement by its customers.

For all these reasons, AEM's motion should be dismissed.

## II.  LEGAL STANDARD

A complaint "generally requires only a plausible 'short and plain' statement of the plaintiff's claim." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citing Fed. R. Civ. P. 8(a)(2)).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id*. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. At the motion to dismiss stage, "the court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inferences' therefrom." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (citing *Iqbal*, 556 U.S. at 678–79).

In a patent infringement case, "it is enough that a complaint place the alleged infringer on notice of what activity … is being accused of infringement." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (citations omitted). "A plaintiff need not prove its case at the pleading stage." *Id*. "The level of detail required in any given [patent] case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id*. at 1353.

## III.    ARGUMENT

### A.    Advantest's allegations are sufficient, especially given that the secrecy of the industry prevents it from obtaining the Accused Products.

A court must use "judicial experience and common sense" in ruling on a motion to dismiss, *Iqbal*, 556 U.S. at 679, and in a patent case must consider the technology at issue and nature of the accused products, *Bot M8*, 4 F.4th at 1353. Both indicate that Advantest's allegations are sufficient here. Advantest's Complaint alleges that semiconductor testing is a secretive business-to-business industry; competitors cannot obtain and analyze other companies' test equipment, and marketing documents and technical specifications are generally not publicly available. (Compl. ¶ 43.) Accordingly, Advantest's Complaint cites to what *is* available: the AEM Copycat Patents, industry reports indicating that AEM is practicing those patents, and public websites. (*Id*. ¶¶ 37–45.) Advantest then explains why these support its belief that AEM is infringing, alleging that "it is

3

virtually impossible [for AEM] to practice the Copycat Patents without also infringing the Asserted Patents" (*id*. ¶ 45), and identifies the specific Accused Products embodying the AEM Copycat Patents (*id*. ¶ 44).  Further, Advantest attaches two exhibits to its Complaint that chart the disclosures of the AEM Copycat Patents against each and every limitation of independent claim 1 of each Asserted Patent.  (Compl. Exhibit I, ECF No. 1-10 ("Compl. Ex. I"), and *id*. Exhibit J, ECF No. 1-11 ("Compl. Ex. J").)  Advantest's allegations are therefore sufficient under the Rule 12 pillars of "notice" and "plausibility," particularly when applying "common sense" within the context of the secretive semiconductor test industry.

Courts routinely uphold claims like Advantest's under similar circumstances. The Federal Circuit has warned that "[a] defendant cannot shield itself from a complaint for direct infringement by operating in such secrecy that the filing of a complaint itself is impossible." *K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013) (reversing grant of motion to dismiss where "the operation of th[e] [accused] systems [wa]s not ascertainable without discovery," and under the "touchstones of … notice and facial plausibility," the plaintiff's lack of details regarding "the specific device or product … should not bar K-Tech's filing of a complaint.").[2]  Indeed, a court recently found allegations like Advantest's sufficient under almost identical circumstances.  In *Power Density Sols. LLC v. United States*, the Court of Federal Claims denied a motion to dismiss claims against the government for infringing patents related to cooling of integrated circuit boards—similar to the semiconductor thermal control technology at issue here.  159 Fed. Cl. 208, 210 (2022).  Because the accused products were not publicly available, due to national security interests, the plaintiffs lacked certain information about them. *Id*. at 213, 220.  Nevertheless, the court reaffirmed that "[t]he Federal Circuit has held

---

[2] *K-Tech* was decided before the patent infringement model pleading ("Form 18") was abrogated, but the court found it did not need to resolve any conflict between Form 18 and the *Iqbal* / *Twombly* standard "where none exists" and that "Form 18 in no way relaxes the clear principle of Rule 8."  *Id*. at 1284.

that it is appropriate in patent infringement cases to use a 'notice and plausibility' standard," under which "a complaint must be facially plausible and must 'place the alleged infringer "on notice of what activity" … is being accused of infringement.'" *Id*. at 218 (citing *Bot M8*, 4 F.4th at 1352 and *K-Tech*, 714 F.3d at 1284).  And, it reasoned, that standard had been met where the plaintiff had "identifie[d] the specific technique employed to perform th[e] function" of their asserted patents and had cited "descriptions in United States patents and images of virtual cooling systems" (i.e., ***the defendant's*** patents) for more information.  *Id*. at 219–220.

Advantest did the same, explaining the technology and products at issue in detail (Compl. ¶¶ 10–19, 25–32, 38–44) and citing AEM's patents to provide more information (*id*. Exs. I and J).  AEM is thus "on notice as to what [it] must defend" and "[t]he Court can reasonably infer from [Advantest's] allegations that at least some of the allegedly infringing systems may have been incorporated into [AEM's] technology." *Power Density*, 159 Fed. Cl. at 219–220.  Nothing else is required at this stage.

The *Power Density* decision has ample company.  The District of Delaware, for example, denied a motion to dismiss where the accused product was "not a product or a service sold to consumers and available for public inspection." *Network Congestion Sols., LLC v. AT&T Inc.*, 108 F. Supp. 3d 246, 248–49 (D. Del. 2015). Under those circumstances, the court, "[d]rawing on [its] judicial experience and common sense," decided that "the notice requirements have been met, based on the quantity and quality of publicly available information." *Id*.  In a more recent patent infringement case, the District of Delaware denied a motion to dismiss where the plaintiff did not know the details of the accused product and could not purchase or test it because it was not commercially available. *Novartis Pharms. Corp. v. Alembic Pharms. Ltd.,* No. CV 22-1395-RGA, 2023 WL 6387975 at *1 (D. Del. Sept. 29, 2023).  Rejecting the defendant's arguments that "information and belief" allegations failed, the court acknowledged "a relaxed standard of pleading in situations where

5

'essential information lies uniquely within another party's control'" (as Advantest alleges here), and distinguished that situation from others involving "commercially available" products. *Id*. at *2, 4.

AEM nonetheless contends the opposite: that its secrecy immunizes it from suit. AEM is candid that it is advancing the position that Advantest's allegations must ***automatically*** fail. AEM argues that because "Advantest readily admits that … it has never possessed any of the AEM Accused Products," it "***foreclos[es]*** the possibility of conducting an infringement analysis," "completely ***undermine[s]*** Advantest's Complaint," and "***warrant[s] dismissing*** the direct infringement counts with prejudice." (Mot. at 1–2.) AEM contends that without that access, "[t]here is ***no possibility***" for Advantest to even supplement its allegations and that "[t]hese facts ***sink*** Advantest's direct infringement allegations." (*Id*. at 3.) According to AEM, Advantest's admission "that it does not have access to AEM's Accused Products" is necessarily "***insufficient*** to state a claim for relief." (*Id*. at 7.) AEM never suggests what more Advantest could do to acquire the specificity AEM contends is missing.

This AEM position ignores case law holding otherwise, and AEM cites no case supporting the contrary and relatively extreme position that it asks this Court to adopt. The closest AEM comes is a Florida case in which the plaintiff "freely admit[ed]" that to even "***establish***" a plausible claim, it had to conduct "reverse engineering." (*See* Mot. at 7 (citing *Askan v. Faro Techs., Inc.*, No. 6:23-CV-920-PGB-DCI, 2024 WL 3443416, at *2 (M.D. Fla. July 17, 2024) (emphasis added).) But the *Askan* plaintiff did not cite to the defendant's patents to describe the accused product's operation, or explain how it infringed. Instead, the plaintiff suggested that the defendant should disclose its source code, which would make it "clear to Plaintiff whether there is infringement or not." *Id*. The Court thus rejected the request "to disclose proprietary information on the mere possibility that an infringement claim may be discovered." *Id*. Unlike the *Askan* plaintiff, Advantest does not condition its claims on discovery. It alleges it has a claim *now* and adequately marshals the

6

publicly available facts to plausibly allege infringement.

No case in AEM's motion supports its request that the Court find, as a matter of law, that Advantest's claims necessarily fail without obtaining the Accused Products. Yet this single consistent and incorrect theme is at the heart of AEM's motion.

### B.    Advantest adequately pleads direct infringement.

To support its direct infringement allegations, Advantest cites the publicly available AEM Copycat Patents, industry reports, and websites that support the plausible inference of AEM's infringement. (Compl. ¶¶ 37–45, Exhibits I, J, K, L.) AEM's attack on Advantest's allegations of direct infringement relies on its argument that Advantest's citation to the AEM Copycat Patents is improper. Once AEM incorrectly sets those allegations aside, it argues that what remains is not enough. But that 1-2 argument falters at both steps.

### 1.    Advantest may properly rely on the AEM Copycat Patents to support infringement.

Advantest's Complaint cites the AEM Copycat Patents to present facts rendering it plausible that AEM has engaged in infringing conduct. Advantest alleges that after Kabbani left Advantest and joined AEM as Chief Technology Officer (Compl. ¶ 23), AEM obtained patents "parroting the details of Advantest's wafer ATI technology but giving it a new name: a 'thermal control wafer,'" and "[e]ach of these patents … named Kabbani … as an inventor." (*Id*. ¶ 38.) The AEM Copycat Patents share multiple similarities to the Asserted Patents, such as "a ceramic wafer with embedded heaters and temperature sensors divided into multiple thermal zones," which "selectively controls the temperature of various thermal zones on the wafer (e.g., individual die or specific regions of the wafer) to more precisely control DUT thermals during test." (*Id*. ¶ 40.) The issuance of these AEM Copycat Patents, and the extent of these similarities, caused concern that "Kabbani had taken Advantest's patented wafer ATI technology with him to AEM, where he and AEM

7

had continued to test and commercialize it" (*id*. ¶ 41), which was heightened by "industry reports confirming that AEM was marketing such products" (*id*. ¶ 44). Advantest alleges that "it is virtually impossible [for AEM] to practice the Copycat Patents without also infringing the Asserted Patents" (*id*., ¶ 45), and cites the specific names of the Accused Products embodying the AEM Copycat Patents (*id*. ¶ 44). Advantest also attaches two claim charts to its Complaint that, over 45 detailed pages, map the disclosures of the AEM Copycat Patents and AEM website citations against each and every limitation of independent claim 1 of each Asserted Patent. (*Id*. Exs. I, J.)

Tellingly, AEM does not challenge Advantest's interpretation of the language of the AEM Copycat Patents or its contention that specific language corresponds with specific limitations from the Asserted Patents.  AEM thus acknowledges that those allegations, if credited by this Court, adequately allege infringement.  (Mot. at 4.)

Instead, AEM argues that all of this should be disregarded.  AEM contends that because "there is no requirement" that a patentee practice its claimed inventions, a defendant's patents may not be cited in support of allegations describing the defendant's conduct.  (*See* Mot. at 8 ("Advantest cannot rely on AEM's patents as evidence of infringement.").)  AEM's argument is essentially that a company's prosecution of numerous applications to issuance as United States patents cannot, as a matter of law, be used to help support a plausible inference that the company is practicing those patents.

AEM asks this Court to adopt that extreme proposition with no case law supporting it.  AEM's cited controlling authority recites only the general proposition that a patentee is not *required* to practice its patent.  That is both true and yet also beside the point, including because AEM's cited cases were decided outside the Rule 12 context.  (*See* Mot. at 7–8, citing *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1547 (Fed. Cir. 1995) (affirming lost profits award because a patentee need not sell its patented invention to recover lost profits); *King Instruments Corp. v. Perego*, 65

8

F.3d 941, 947 (Fed. Cir. 1995) (same); *Dawson Chem. v. Rohm & Haas*, 448 U.S. 176, 215 (1980) (affirming that patentee's refusal to offer license to contributory infringer was not patent misuse); *Forest Labs., Inc. v. Abbott Labs.*, 239 F.3d 1305, 1312 (Fed. Cir. 2001) (affirming judgment as a matter of law that patentee did not present substantial evidence of infringement at trial using international patent application directed to a different product).)  The basic principle that a patentee is not ***required*** to practice its patents does not support AEM's dramatic leap that it is ***not plausible*** that it is doing so.  AEM's investment of the resources necessary to obtain patents "parroting" the Asserted Patents, particularly within the context of Advantest's other allegations supporting that AEM is marketing the Accused Products (Compl. ¶¶ 38–45), supports the plausible inference that AEM is practicing the Asserted Patents and places AEM on notice of what is accused of infringement. *See supra, Power Density*, 159 Fed. Cl. at 219 (2022) (finding complaint sufficient where plaintiffs unable to acquire accused products had instead cited defendant's patents and had adequately placed defendant "on notice as to what [it] must defend").

AEM's other cited authority is obviously inapplicable to any experienced patent litigator.  For example, in *Abbott Point of Care* (Mot. at 8), an Alabama court precluded the defendant from arguing at trial that it could not infringe the plaintiff's patents because it was practicing its own patents.  868 F. Supp. 2d 1310, 1328 (N.D. Ala. 2012).  The court's rejection of that gambit, which is not infrequently attempted by patent defendants, was appropriate because it is entirely possible under the patent laws to practice two patents at the same time, and a defendant practicing its own patent does not relieve it of liability for also practicing the plaintiff's patent.  And yet that principle actually supports Advantest's allegations here.  Further, in *Abbott Point of Care*, the court noted that infringement or non-infringement evidence could (at trial, after discovery had occurred) be derived from looking at the actual, accused product, which option does not exist in this case at the pleadings stage.  *Id*.

Only one of AEM's five cited cases—an unpublished fifteen-year-old decision

9

from Minnesota—actually addresses this issue in the context of a Rule 12 motion. (*See* Mot. at 8 (citing *Superior Indus., L.L.C. v. Thor Glob. Enters. Ltd.*, No. CIV. 10-2524 MJD LIB, 2011 WL 601217, at \*1 (D. Minn. Feb. 11, 2011).)  But the plaintiff in *Superior Industries* had not even alleged that "certain products sold by Thor infringe the patents in suit," citing solely to a single patent application and nothing else to support that any products even *existed* at all.  *Id.* at \*1.  In stark contrast, Advantest alleges that specific AEM products exist now and are being sold now, and cites to industry reports and specific product names on AEM's website.  (Compl. ¶ 44.)  Also, the *Superior* plaintiff cited only a patent application, not multiple issued patents, so the court credited the defendant's argument that "this action is premature because the PTO has yet to determine the metes and bounds of Thor's patent application."  *Superior Indus.,* 2011 WL 601217, at \*1.  Advantest, on the other hand, cites multiple issued patents whose "metes and bounds" are set.

AEM fails to show that Advantest may not rely on the AEM Copycat Patents to raise a plausible inference of infringement.

### 2.    Advantest's additional allegations regarding AEM's direct infringement are likewise adequate.

AEM's remaining attacks on the direct infringement allegations rely on ignoring Advantest's citations to the AEM Copycat Patents.  (*See, e.g.*, Mot. at 3 ("*[o]utside of AEM's patents*, Advantest uses high-level generic descriptions"); *id.* at 4 *("[b]ut without AEM's patents*, Advantest's 'additional color' fails"); *id.* ("*[w]ithout its citations to AEM's patents*, Advantest's allegations lack any factual basis").)  Because AEM is incorrect about whether Advantest may rely on the AEM Copycat Patents, these strawman arguments are easily set aside, and are furthermore independently defective for other reasons.

**The Complaint places AEM on notice of the infringing products:**  AEM claims that Advantest fails to "identify any specific accused configuration, version, or feature-set" of the Accused Products.  (Mot. at 4–5.)  But Advantest **does** specify the

10

Accused Products, describing their specific technology and even listing some by name. (Compl. ¶ 44 ("products that embody AEM's Copycat Patents … includ[ing] at least the combination of AEM TCWs with AEM's 'MMP Multi Purpose Frame/Wafer Probe System,' [and] AEM's 'KRONOS Inertial Sensor Wafer Probe System.'").) Pictures of those specific products are provided in the claim charts (unrelated to the AEM Copycat Patents). (*See, e.g.*, Compl. Ex. I at 4–5; *id*. Ex. L.) AEM's contention that this is not specific *enough* demands more from Advantest at the pleading stage than this District's Patent Local Rules do at a later stage for infringement contentions. *See* Patent Local Rule 3.1(b) (requiring identification of each accused product only "of which the party **is aware**" and the "name or model number, **if known**") (emphasis added). Regardless, AEM's own cited authority indicates that Advantest is not required to identify a specific product at this stage. *TeleSign Corp. v. Twilio, Inc.*, No. CV 16-2106 PSG (SSx), 2016 WL 4703873, at *3 (C.D. Cal. Aug. 3, 2016) (plaintiff's claim that "registration technology" was infringing was sufficient so long as it did not "encompass" defendant's "entire business"). Rule 8 does not require specifically naming a particular product; rather, it is simply necessary to "put the defendant on notice of which products are at issue." *Id*. What that "notice" comprises is a context-dependent standard that Advantest satisfies and AEM ignores. *Id.*[3]

**Advantest's "information and belief" allegations are sufficient:** AEM argues that Advantest's reliance on "information and belief" allegations "casts a

---

[3] AEM's repeated citation to *Bot M8* to suggest that sophisticated technology requires more detail, not less (*see, e.g.*, Mot. at 4–5) is misplaced. The plaintiff in *Bot M8* was afforded ample opportunity to conduct a "teardown" of the accused products (unlike Advantest), and it was its failure to allege infringement notwithstanding that opportunity that was fatal to its claims. *See* 4 F.4th at 1355. Moreover, the Federal Circuit specifically noted that the district court had been "wrong" to demand source code-related evidence where the plaintiff had indicated that source code was "not publicly available and [] the software on the PS4 is encrypted and protected." *Id.* at 1349. By the same token, AEM is "wrong" to demand evidence that is available only via a teardown of its industrial accused products unavailable to Advantest outside of discovery.

11

shadow" over the allegations and makes them speculative. (Mot. at 3–4.) But pleading on information and belief is entirely proper where "the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (citation omitted).[4] Advantest's information-and-belief allegations relevant to direct infringement satisfy both prongs of that standard. Advantest's first information-and-belief allegation regarding direct infringement is that "the descriptions in [the claim charts] disclose functionality contained in AEM's Accused Products" (*see* Compl. Ex. I at 1, Ex. J at 1)—those facts are "peculiarly within [AEM's] possession and control" given the unavailability of the Accused Products. *Park*, 851 F.3d at 928. Advantest's second information-and-belief allegation is that its claims are made after "a reasonable investigation of all information practicably obtainable" (*see* Compl. Ex. I at 1, Ex. J at 1)—showing that the allegations are "based on factual information that makes the inference of culpability plausible." *Park*, 851 F.3d at 928.

AEM's cited authority actually supports the sufficiency of this manner of pleading. (*See* Mot. at 3–4.) In *Celgard, LLC v. Shenzhen Senior Tech. Material Co.*, the court rejected information-and-belief pleading as to infringement where the defendant had "ma[de] no assertion that it lacks access to" the allegedly infringing products, as Advantest does. No. 19-cv-05784-JST, 2020 WL 7392909, at *5 (N.D. Cal. July 23, 2020). Further, the Court held that the information-and-belief allegations of infringement in that case were inadequate because the plaintiff offered only "bare assertions" that the defendants engaged in infringement—not extensive claim charts mapping the accused products to each claim limitation, as Advantest has

---

[4] *See also Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1084 (9th Cir. 2014) (reversing dismissal based on failure to plead diversity jurisdiction where necessary information could be pleaded only on "information and belief"); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 920 (S.D. Cal. 2020) (finding "information and belief" allegation of third-party beneficiary status sufficient at pleading stage where facts were primarily within defendant's knowledge).

12

provided here.  *Id.*

**Advantest relies on more than its website citations:**  AEM claims that "the combination of snapshots from an AEM website with isolated high-level quotes from an unrelated website" is "not enough to put AEM on notice of how its products allegedly infringe."  (Mot. at 5–7.)  AEM also disproportionately focuses its motion on one of these website citations (aemdeposition.com), which AEM claims is maintained by another "AEM" entity that manufactures semiconductor test equipment.  (*See generally* Mot. at 4–5, 9–10, 12.)  But AEM admits that Advantest references those websites only as "additional color" and specifically notes that the Complaint's other allegations are sufficient without it.  (Mot. at 4; Compl. Ex. I at 1, Ex. J at 1.)  AEM's contention that the "additional color" alone is "not enough" repeats a truism and says nothing about the sufficiency of Advantest's Complaint as a whole.  In fact, that one allegedly incorrect website citation is so inconsequential that when AEM claimed that it had no affiliation with it, Advantest offered to amend its Complaint to remove that citation if AEM would provide that representation in writing.  AEM declined that offer and instead dedicated pages of its briefing to this non-issue, including submitting a factual declaration in support of a Rule 12 motion.

**Advantest pleads specific claim limitations:**  AEM claims that Advantest "fails to plead specific claim limitations" because it supposedly offers "only citations to AEM's patents and a website that is not AEM's (aemdeposition.com), with no citations to how the Accused Products allegedly work."  (Mot. at 9.)   That argument is specious.  Advantest addresses each and every limitation of claim 1 of each Asserted Patent by citing corresponding descriptions from the AEM Copycat Patents across 45 total pages.  AEM's contention that such pleading is "improper" (*id.*) is wrong, as described above, and its reiteration of this argument as applied to claim limitations has no more force in this context.  Moreover, AEM does not identify any particular limitation that Advantest fails to plausibly allege the Accused Products

practice.[5]  AEM's cited authority, involving a plaintiff who "simply reiterat[ed] the abbreviated claim limitations on Defendant's side of the claim chart," is entirely distinguishable and therefore does not change that conclusion.  *Yi-Ping Lin v. Transform Partners LLC*, No. 18cv1933 DMS (KSC), 2019 WL 446403, at *2 (S.D. Cal. Feb. 4, 2019).

**3.    Advantest adequately pleads domestic acts of infringement under 35 USC § 271(a).**

Next, Advantest adequately pleads domestic acts of infringement.  Advantest alleges that "AEM has been and is now directly infringing the ['999 Patent/'841 Patent] in violation of 35 U.S.C. § 271(a) at least by making, using, selling, offering for sale, and/or importing into the United States the Accused Products."  (Compl. ¶¶ 48, 62.)  Advantest bases these allegations in part on "the considerable effort and expense AEM has undertaken to file numerous [United States] patent applications relating to this technology; and … industry reports confirming that AEM is marketing such products."  (*Id*. ¶ 44.)  Advantest alleges that AEM filed for United States patents "parroting the details of Advantest's wafer ATI technology" (*id*. ¶ 38) and describes the bases for its concern that "AEM had continued to test and commercialize [Advantest's technology]" (*id*. ¶ 41).  Advantest also explains how Kabbani, "AEM Holdings's CEO and a California resident" (*id*. ¶ 8), replicated Advantest's technology at AEM "when AEM solicited Kabbani to join it as its Chief Technology Officer" (*id*. ¶ 23), and that "AEM Americas is a California corporation headquartered in San Diego, California" (*id*. ¶ 5).  Advantest also alleges that industry reports "indicat[ed] that AEM was marketing a wafer ATI product," and that AEM "trumpeted its 'PX technology … to redefine wafer thermal control during

---

[5] This is also why AEM's string-cite of authorities arguing AEM is not "on notice of how its products allegedly infringe" is irrelevant.  Mot. at 5–6 (citing *Scripps*, *Novitaz*, *Atlas*, *Garrett*, *Newtonoid*, and *Midwest Athletics*).  Each of those cases found that the plaintiff had failed to allege facts supporting one or more particular limitations; AEM does not and cannot identify that flaw here with Advantest's claim charts.

14

probe'" and "anticipated 'launching evaluations at all three advanced node (sub-7nm) foundry suppliers by late 2025.'" (*Id.* ¶ 42.)  These facts, taken together, provide "Advantest [with] a reasonable basis to believe[] and allege[] that AEM is using, offering for sale, and selling within the United States … the combination of [Accused Products], consistent with the disclosures of the Copycat Patents, within the United States."  (*Id.*, ¶ 44.)  These allegations are more than sufficient to state a claim for infringement within the United States.

To contend otherwise, AEM (again) relies on its prior mistaken argument that any allegations regarding AEM's patents should be disregarded—ignoring Advantest's allegations regarding AEM's patent prosecution efforts in the United States.  (*See supra*, Section III.B.1.)  With those allegations removed, AEM then offers three arguments for why the remaining United States infringement allegations fail.

First, AEM argues that Advantest never "even allege[s] that AEM makes, uses, imports, offers to sell, and/or sells the Accused Products in the United States" (Mot. at 9), which is plainly incorrect.  (*See, e.g.,* Compl. ¶¶ 42, 44, 63.)

Second, AEM misleadingly suggests that Advantest bases its United States infringement allegations on AEM websites alone, which it contends are insufficient to show United States infringement.  (Mot. at 10.)  But Advantest never alleges that the websites alone provided that United States connection; it cites the websites as additional support for AEM's Accused Products practicing the Asserted Patent claims.  (*See, e.g.*, Exhibit I at 1, 3–4.)  AEM's sole case involving website-related allegations is therefore inapposite, but in any event reinforces why Advantest's allegations are sufficient.  In *Sound N Light Animatronics Co., LTD v. Cloud b, Inc.* (Mot. at 10), where the defendant offered to sell the accused products to Chinese residents and distributors, and offered those products on a website, the court rejected plaintiff's speculation that "the intended location of the sales … *may possibly* have been elsewhere [besides China], including the United States."  No. CV 16-05271-

15

GHK (JPRx), 2016 WL 7635950, at *4 (C.D. Cal. Nov. 10, 2016).  In contrast, Advantest alleges specific facts supporting United States infringement; it does not baselessly speculate that solely foreign activity "may possibly" have been "intended" to also occur domestically.  AEM's other supporting cases are no more applicable; they all involve courts dismissing allegations that recited the legal elements of domestic infringement without supporting facts.  (*See* Mot. at 11.)[6]  Since Advantest alleges more than the legal elements, and does not base its allegations of domestic infringement solely on the existence of any website, this argument fails.

Third, AEM contends that Advantest's citation to AEM's Annual Report is a forward-looking statement that cannot constitute infringement under 35 U.S.C. § 271(a).  But the relevant portion of the Annual Report, which AEM labels as "forward-looking" (Mot. at 12), actually contains three statements, only one of which is "forward-looking."  (Compl. ¶ 42.)  Advantest alleges in Paragraph 42 that (1) industry reports "indicat[ed] that AEM *was* marketing a wafer ATI product" (past tense marketing); (2) AEM's *2024* annual report "trumpeted its 'PX technology … to redefine wafer thermal control during probe'" (existing technology); and (3) "AEM anticipated 'launching evaluations at all three advanced node (sub-7nm) foundry suppliers by late 2025.'"  (*Id*.)  The final statement to "late 2025," although forward-looking at the time it was made in that annual report, had come to pass by the time Advantest filed its Complaint on October 1, 2025.  And it doesn't matter anyway—it qualifies as factual support regardless of the timing.

At its core, AEM's argument regarding 35 U.S.C. § 271(a) is just another

---

[6] *See, e.g.*, *Conformis, Inc. v. Zimmer Biomet Holdings, Inc.*, No. 19-cv-1528-RGA, 2022 WL 1909386, at *4 (D. Del. June 3, 2022) (plaintiff alleged "bare, conclusory allegations [that] are no more than a formulaic recitation of the elements of a cause of action") (citation omitted); *Benson Ave. Co. LLC v. ARRI Americas Inc.*, No. 2:24-cv-07209-SVW-RAO, 2025 WL 2684035, at *3 (C.D. Cal. Aug. 14, 2025) (plaintiff alleged "threadbare recitals of the elements of cause of action"); *Apollo Fin., LLC v. Cisco Sys., Inc.*, 190 F. Supp. 3d 939, 943 (C.D. Cal. 2016) (plaintiff "recit[ed] the elements of a patent infringement claim in a conclusory fashion, absent any factual support").

ADVANTEST'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:25-cv-02604-JES-BJW

manifestation of its flawed theme that because AEM operates in secrecy and does not offer these products for public sale, Advantest cannot "prove" a sale in the United States at the pleadings stage.  But Advantest specifically alleges why it could not purchase or acquire AEM products (Compl. ¶ 43); AEM never disputes that allegation, nor suggests another route that Advantest should have pursued.  By criticizing Advantest for citing to "no pricing, no shipping details, … no purchase options" (Mot. at 11) and no "price or purchase terms" (*id.* at 12) in the United States, while simultaneously acknowledging that Advantest has "no possibility" of discovering that information (*id.* at 3), AEM places itself in a no-lose situation.  The Court should consider whether that conclusion is reasonable using its "judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  Under the applicable standard, Advantest adequately "allege[s] facts to support a reasonable inference that Defendant [] infringed its patent in the United States." *Tetro LTD. v. Smart Trike MNF. PTE. LTD.*, No. 1:22-CV-04938-LMM, 2023 WL 9898324, at *2–3 (N.D. Ga. Apr. 18, 2023) (denying motion to dismiss and rejecting argument that plaintiff had failed to plead infringing conduct in the United States).

### 4.   Advantest adequately alleges that each Defendant infringes.

AEM is no more successful in arguing that Advantest's claims fail because it "does not differentiate between the three AEM entities." (Mot. at 13–14.)  As an initial matter, AEM is simply wrong that Advantest "only refers to 'AEM' as a whole throughout the Complaint." (Mot. at 14.)  Advantest alleges numerous facts about each individual entity defendant, such as their relationship to one another (Compl. ¶ 5), that each engages in business in California and has engaged in infringing acts in this District (*id.* ¶ 8), that Kabbani is the CEO of one entity (*id.* ¶ 2), and that another entity is an assignee of the AEM Copycat Patents (*id.* ¶ 38).  These individualized facts support the conclusion that each AEM entity is engaged in infringement. *See DeSoto Cab Co. v. Uber Techs., Inc.*, No. 16-cv-06385-JSW, 2018 WL 10247483, at *16 (N.D. Cal. Sep. 24, 2018) ("the Complaint fairly claims that each of the four

17

Uber-related entities participated in the alleged wrongful conduct, even if the allegations are accomplished through group pleading").  Indeed, Advantest accuses all three entities of infringement (Compl. ¶¶ 48, 62), and AEM does not even bother to dispute that it has been given adequate notice of this fact.  *See In re Pac. Fertility Ctr. Litig.*, No. 18-cv-01586-JSC, 2019 WL 3753456, at *3 (N.D. Cal. Aug. 8, 2019) (citing *Munning v. Gap, Inc.*, No. 16-CV-03804-TEH, 2016 WL 6393550, at *3 (N.D. Cal. Oct. 28, 2016) ("because the Defendants all share a parent-subsidiary relationship with The Gap Inc. as the parent company and because all the Defendants are represented by the same counsel, frustration of notice of the claims to each defendant is unlikely")).

Further, AEM's own authorities (Mot. at 13) acknowledge that "group pleadings may be appropriate if the defendants are similarly situated." *E-Vision Optics, LLC v. Luxottica Grp. S.P.A.*, No. SA CV 23-02013-AB (SHKx), 2024 WL 1601853, at *4 (C.D. Cal. Mar. 8, 2024); *see also Parity Networks, LLC v. Moxa Inc.*, No. SACV 20-698 JVS(KESx), 2020 WL 6064636, at *3 (C.D. Cal. Sep. 11, 2020) (Mot. at 14, permitting "group pleading" as to corporate affiliate defendants).  That includes where "a group of defendants is small, closely related, or engaged in the same wrongful conduct," as here with AEM.  *Roberts v. Cty. of Riverside*, No. EDCV 19-1877 JGB (SHKx), 2020 WL 3965027, at *3 (C.D. Cal. June 5, 2020).  AEM's other authorities, involving large groups of disparate, dissimilar defendants (unlike the case with AEM), actually repeat this principle and are otherwise inapt.  *See Slack v. Int'l Union of Operating Eng'rs*, No. C-13-5001 EMC, 2014 WL 4090383, at *16 (N.D. Cal. Aug. 19, 2014) (noting that "'group pleading' in a complaint is not *per se* improper" but that "sprawling" complaint against 51 differently-situated defendants alleging "various acts of misconduct" was insufficient); *In re Am. Apparel S'holder Derivative Litig.*, No. CV 10-06576 MMM (RCx), 2012 WL 9506072, at *41 (C.D. Cal. July 31, 2012) ("While there might be a need to distinguish among different groups of defendants if … they were differently situated … , the court declines to

18

impose a blanket requirement that failure to differentiate among 'Individual Defendants' necessarily renders the complaint defective on its face."); *Resh, Inc v. Skimlite Mfg. Inc*, 666 F. Supp. 3d 1054, 1059 (N.D. Cal. 2023) (addressing 213-page "shotgun" complaint that defined "defendants" to include corporate defendant and two individual defendants "but also any and/or all other Defendants or any individuals or other entities"); *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sep. 20, 2011) (group pleading for eight different mobile industry competitors not alleged to be affiliated or coordinating with one another).

The three AEM entities here are similarly situated—so much so that ***AEM*** does not distinguish among them at all in its own motion.  (Mot. at 1 (defining Defendants as "collectively, 'AEM'").)  The motion is filed on behalf of all three Defendants and refers to "AEM" as a single entity throughout.  No AEM entity makes a single unique jurisdictional or merits-based argument in that motion.

### C.    Advantest adequately pleads indirect infringement.

AEM's arguments to dismiss Advantest's indirect infringement allegations all boil down to "Advantest is not specific enough," and they fare no better.  AEM ignores relevant allegations in the Complaint and disregards the applicable standard.

#### 1. Advantest adequately pleads AEM customers' direct infringement.

AEM's argument that Advantest does not plead direct infringement by AEM's customers (Mot. at 16) fails.  Advantest alleges that AEM's products "are sold [] to semiconductor companies" (Compl. ¶ 43), and that AEM induces those customers to purchase the Accused Products and use them in an infringing manner "through [AEM's] education and promotion materials and support and service activities" (*id*. ¶¶ 53, 67).  AEM also "instruct[s], encourage[es], and/or direct[s] others how to use AEM TCWs in conjunction with wafer probe testers in ways that directly infringe." (*Id*.)  The Accused Products are defined in part as "products that embody AEM's

19

Copycat Patents" (*id*. ¶ 44), and Advantest's claim charts show why "it is virtually impossible" (*id*. ¶ 45) for a user of those Accused Products to not infringe.  Advantest alleges how these systems function and that "[t]he tester [] operates the DUT under a variety of operating and environmental conditions to ensure that it meets specified requirements of function, timing, and electrical characteristics." (*Id*. ¶¶ 14–15.)  In the claim charts of Exhibits I and J, Advantest shows how the Accused Products infringe when operated by the user to "control[] a thermal control wafer and a coldplate, such as during wafer probe testing." (*See, e.g.*, *id*. Ex. I at 1.)  These claim charts also include screenshots from AEM's website that describe for its website visitors the functionality of AEM's "Multi Purpose Frame/Wafer Probe System" and "Inertial Sensor Wafer Probe System." (*See, e.g.*, *id*. at 4–5; Compl. Ex. J at 4.)

Advantest's allegations adequately create the "inference that at least one directly infringing customer … exists." *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 46 (Fed. Cir. 2024) (finding plaintiff sufficiently pleaded induced infringement and vacating order dismissing those claims).  These factual allegations support that the end user directly infringes through the intended and only substantial use of the Accused Products.

Advantest is not required to identify any specific customer as a direct infringer.  The cases AEM cites to the contrary[7] are district court decisions ***preceding*** the Federal Circuit's 2012 holding that to allege indirect infringement, "a plaintiff need not identify a *specific* direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists." *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012) (emphasis in original); *see also AlexSam*, 119 F.4th at 46 (in 2024, vacating dismissal because

_____

[7] *See, e.g., Anticancer, Inc. v. Leica Microsystems, Inc.*, No. 11-cv-2756-JMA, 2012 WL 12862585, at *3 (S.D. Cal. May 14, 2012) (court disagreeing that plaintiff "ha[d] identified the alleged infringers"); *Brain Life, LLC v. Elekta Inc.*, No. 10-cv-1539-LAB-BGS, 2011 WL 12816674, at *13 (S.D. Cal. July 19, 2011) (criticizing plaintiff for not "identify[ing] the underlying infringement" induced through "unnamed medical practitioners'").

"[c]ontrary to Aetna's contention, AlexSam was not required to identify a specific customer").  Advantest alleges that AEM's products "are sold [] to semiconductor companies," and did not further specify because "semiconductor test is a secretive, business-to-business industry."  (Compl. ¶ 43.)

### 2.    Advantest adequately pleads contributory infringement through the absence of substantial non-infringing uses.

For contributory infringement, Advantest alleges that AEM's products are "not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence cited above and in Exhibit [I/J]" (the claim chart) for each patent.  (Compl. ¶¶ 54, 68.)  The entirety of the Complaint and Exhibits I and J must thus be incorporated into any analysis of this contributory infringement allegation.  (*See also id*. ¶¶ 46, 60 (repeating and re-alleging all allegations).)  In the body of the Complaint, Advantest alleges that "[g]iven the similarities between the technology described in the Copycat Patents and the Asserted Patents, it is virtually impossible to practice the Copycat Patents without also infringing the Asserted Patents."  (*Id*., ¶ 45.)  The Accused Products are defined in part as "products that embody AEM's Copycat Patents" (Compl. ¶ 44), and Advantest's claim charts show why they infringe—with 45 pages of factual allegations charting the disclosures of AEM's Copycat Patents (and the Accused Products embodying them) against every limitation of independent claim 1 of each Advantest Asserted Patent.  (*Id*. Exs. I, J.)

Ignoring these allegations, AEM argues that Advantest merely recites the statutory language for contributory infringement.  (Mot. at 17.)  Not so—Advantest recites more than that, as described above.  And here, where the Accused Products are "plainly [] 'good for nothing else' but infringement of the patented process," there is an unavoidable presumption of no non-infringing use.  *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337–38 (Fed. Cir. 2008) (vacating summary judgment of no contributory infringement in part because "[w]hen a manufacturer includes in its product a component that can only infringe, the inference that

21

infringement is intended is unavoidable").  Unlike the cases AEM cites with conclusory recitations of the legal elements without factual support (Mot. at 17–18), Advantest "plead[s] facts that allow an inference that the [Accused Products] have no substantial non-infringing use."  *Nat. Alternatives Int'l, Inc. v. Creative Compounds*, LLC, No. 16-CV-02146-H-AGS, 2017 WL 11421891, at *4 (S.D. Cal. Mar. 15, 2017) (finding that contributory infringement claim alleged sufficient facts to avoid "futility" on motion to amend complaint).  Especially at this pleading stage, "it is entirely appropriate to presume that one who sells a product containing a component that has no substantial noninfringing use in that product does so with the intent that the component will be used to infringe."  *Ricoh*, 550 F.3d at 1338.

### 3.    Advantest adequately pleads AEM's knowledge of the Asserted Patents and specific intent to induce infringement.

AEM contends that Advantest does not adequately allege AEM's knowledge of the patents or specific intent to induce infringement.  Again, the Complaint's plain words undermine AEM's position.

Advantest alleges AEM's pre-Complaint knowledge of the Asserted Patents. Compl. ¶¶ 51, 65 ("AEM has had knowledge of the ['999 Patent/'841 Patent] prior to the filing of the instant complaint").  To support that "knowledge," Advantest describes the detailed factual history of how the named inventor on the Advantest Asserted Patents, Kabbani, funneled supply contracts to his own secret companies while at Advantest, then joined AEM as Chief Technology Officer to lead AEM's technical development, how AEM paid an arbitration settlement of $20 million related to Kabbani's conduct at Advantest and then promoted him to AEM Holdings's CEO, and that Kabbani is the named inventor on the AEM Copycat Patents parroting the same technology as the Advantest Asserted Patents.  (*See generally* Compl. ¶¶ 13–45.)  The Complaint also alleges that the AEM Copycat Patents specifically referenced the Advantest '999 Patent and the '841 application during prosecution (*id.*, ¶¶ 51, 65); both sets of patents list Kabbani as the named inventor.

AEM downplays but acknowledges in its motion that "AEM and Advantest have interacted previously" and have "past interactions." (Mot. at 1.) But these extensive past interactions, in combination with AEM Holdings's current CEO being the named inventor of both the Asserted Patents and Copycat Patents, and AEM's citation to Advantest's patents during prosecution, support the allegations of AEM's knowledge of the Asserted Patents. These same facts also support that AEM had the specific intent for its customers to infringe when those customers use the Accused Products (embodying the Copycat Patents) for testing. In addition, Advantest alleges that "it is virtually impossible to practice the Copycat Patents without also infringing the Asserted Patents." (Compl. ¶ 45.) Because AEM "induc[es] its customers to [] purchase the Accused Products and/or [] instruct[s] … [them] how to use the Accused Products in ways that directly infringe" (*id*., ¶¶ 53, 67), AEM has that specific intent. To the extent AEM appears to suggest that the absence of the phrase "specific intent" renders the allegations deficient (Mot. at 19), it is black letter law that the substance of the allegations controls the analysis rather than the formal words used. *Totes-Isotoner Corp. v. United States*, 594 F.3d 1346, 1355 (Fed. Cir. 2010) ("With respect to pleadings, it is understood that a court looks to 'the quality of its substance rather than according to its form or label.'") (citation omitted).

### D.    Advantest adequately pleads willful infringement.

AEM's argument that Advantest has not pleaded willful infringement likewise requires consciously disregarding Advantest's actual allegations. AEM obliquely references the existence of those allegations in claiming (without support) that "[g]eneralized references to past interactions or business dealings do not plausibly establish that AEM knew it was infringing" (Mot. at 20), but this bland description comes nowhere near to capturing the actual scheme alleged by Advantest: that Kabbani, the inventor on the Asserted Patents, "smuggled out" the at-issue technology to AEM (Compl. ¶ 2), where he and his co-conspirators are now the inventors on the Copycat Patents that show AEM is engaging in infringing conduct

23

(*id.*, ¶ 38), and that AEM already paid $20 million to settle claims relating to Kabbani's prior malfeasance and its own enabling thereof.  (*Id.*, ¶¶ 22–23.)  These facts plausibly allege that AEM knew of the Asserted Patents (which list its principal agent, Kabbani, as an inventor), had that knowledge while it continued to infringe (a technical development effort led by Kabbani), and knew that this constituted infringement.

AEM's own case law supports that conclusion.  In *Arbmetrics, LLC v. Dexcom Inc.*, for example, the plaintiff had not adequately alleged willful infringement where it omitted "specific factual allegations about Defendant's subjective intent or details about the nature of Defendant's conduct to render a claim of willfulness plausible, and not merely possible"—as Advantest does.  No. 18-cv-00134-JLS-KSC, 2019 WL 12473781, at *3 (S.D. Cal. Feb. 19, 2019).  And *Smith Interface Technologies, LLC, Plaintiff, v. Apple Inc.,* involving a notice letter that "did not explain how the defendants' accused products infringed the asserted patents," has no application here, where AEM is alleged to have substantial pre-existing knowledge of the Asserted Patents (given, at a minimum, that the AEM Holdings CEO is an inventor on them)[8] and to have copied the at-issue technology after it was "smuggled out" by that same individual.  No. 23-CV-1187 TWR (BGS), 2024 WL 6916566, at *4 (S.D. Cal. Aug. 5, 2024).  AEM also cited the Asserted Patents in prosecuting the AEM Copycat Patents.  (*See* Compl. ¶¶ 51, 65.)

AEM's conduct is alleged to be willful (Compl. ¶ 56, 70) not just because AEM was aware of the Asserted Patents and infringed anyway, but because it ***specifically intended to do that***.  This goes above and beyond allegations that AEM "acted despite a risk of infringement that was either known or so obvious that it

---

[8] *See Splunk Inc. v. Cribl, Inc.,* 662 F. Supp. 3d 1029, 1037 (N.D. Cal. 2023) (finding willfulness allegations insufficient even though defendant's employees had previously "managed [plaintiff's] products which practice [the asserted patents]" in part because "***they were not named inventors of the asserted patents***.") (emphasis added).

24

should have been known," and is thus sufficient at this stage. *Seoul Viosys Co. v. Feit Elec. Co.*, No. 2:24-cv-04238-CV (AJRx), 2026 LX 30411, at *8 (C.D. Cal. Jan. 14, 2026). Here, Kabbani is the named inventor on both the Asserted Patents and the AEM Copycat Patents that cite the Asserted Patents; his knowledge and intent is easily inferable and properly imputed to AEM.

### E.    Leave to amend should be granted if this complaint is dismissed.

In any event, even if the Court were to agree that dismissal were warranted for any claim of the Complaint, Advantest should be granted leave to amend. "The Ninth Circuit has a liberal policy favoring amendments, and thus leave to amend should be freely granted." *NOCO Co. v. Winplus N. Am., Inc.*, No. 8:23-cv-00269-DOC-DFM, 2025 WL 2427985, at *2 (C.D. Cal. July 16, 2025) (citing *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992)).[9] AEM's contention that amendment is futile because Advantest cannot acquire the Accused Products (Mot. at 3), and brief suggestion to dismiss with prejudice (Mot. at 22), should be rejected out of hand. Crediting such an argument would endorse the same immunity from liability that AEM improperly advocates throughout, and should be rejected for the reasons described above. (*See supra*, III.A.) This position also disregards that new evidence may have emerged since the filing of Advantest's complaint that would materially bear on these issues. (*See, e.g.*, Compl. ¶ 42 (citing AEM's 2024 annual report, which indicated that AEM anticipated "launching evaluations at all three advanced node (sub-7nm) foundry suppliers by *late 2025*").)

## IV.    CONCLUSION

For these reasons, AEM's motion to dismiss should be denied in its entirety.

---

[9] Ninth Circuit law applies to the decision to grant leave to amend. *H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1384 (Fed. Cir. 2002) ("In determining whether a dismissal should have been with or without prejudice, this court applies the law of the pertinent regional circuit").

DATED: February 11, 2026        By:   */s/ John M. Neukom*

JOHN M. NEUKOM (SBN 275887)
john.neukom@davispolk.com
**DAVIS POLK & WARDWELL LLP**
900 Middlefield Road, Suite 200
Redwood City, CA 94603
Telephone: (650) 752-2000

RYAN K. IWAHASHI (SBN 284766)
ryan@gishpllc.com
THOMAS J. PARDINI (SBN 313401)
tom.pardini@gishpllc.com
**GISH PLLC**
50 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 630-2000

ANDREW D. GISH (*admitted PHV*)
andrew@gishpllc.com
MICHAEL M. POWELL (*admitted PHV*)
michael@gishpllc.com
**GISH PLLC**
41 Madison Avenue, Floor 31
New York, New York 10010
Telephone: (212) 518-2000

*Attorneys for Plaintiff*
*Advantest Test Solutions, Inc.*