UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADVANTEST TEST SOLUTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> AEM HOLDINGS LTD., a Singapore corporation; AEM SINGAPORE PTE LTD, a Singapore corporation; and AEM AMERICAS, INC., a California corporation, <br><br> Defendants. | Case No.:  3:25-cv-2604-JES-BJW <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> **[ECF No. 24]** |

This case is a patent infringement action arising from an alleged "copycat" of patented temperature regulating technology relevant to a specific type of product test in the semiconductor industry. Plaintiff Advantest Test Solutions, Inc. ("Plaintiff") alleges that Defendants AEM Holdings Ltd., AEM Singapore Pte. Ltd., and AEM Americas, Inc. (collectively, "Defendants") copied its patented temperature regulating technology with the help of a former employee. ECF No. 1 ("Compl."). Before the Court is Defendants' motion to dismiss, which argues Plaintiff makes too speculative of claims, does not show active use in this country, does not differentiate amongst Defendants, and does not show

1

willfulness. ECF No. 24-1 ("Mot.") at 8. Plaintiff opposed the motion on all bases (ECF No. 32 ("Opp'n")), and Defendants filed a reply (ECF No. 35 ("Reply")). For the reasons set forth below, the Court **GRANTS** the motion with leave to amend.

## I.    BACKGROUND

Plaintiff is a company that makes equipment used to test semiconductors, which are key building blocks in modern electronic devices. Compl. ¶ 10. Semiconductor manufacturers require thorough testing of the nano-meter scale circuits in their devices, including functional tests, timing tests, and electric characteristic tests. *Id.* ¶ 11. These companies use automated testing equipment to conduct their testing. *Id.* Thermal control technology in automated testing equipment helps control highly variable system temperatures to increase the accuracy of the test and protect the semiconductors being tested. *Id.* ¶ 12.

The patents at issue in this action pertain to a novel thermal control technology developed by Plaintiff called the wafer active thermal interposer ("wafer ATI"). *Id.* ¶¶ 19, 24. Plaintiff's original active thermal interposer technology ("ATI") product was designed to regulate the temperature of devices during testing in systems-level tests, which evaluate semiconductors in their final user environments. *Id.* ¶ 14. The wafer ATI expanded the ATI technology to regulate temperature during a different test known as the wafer test, in which individual pieces of a semiconductor are evaluated on a silicon wafer before the wafer is diced into individual chips. *Id.* ¶ 17. The wafer ATI technology places a large circular ceramic interposer with embedded heater and temperature sensors against the backside of the wafer, while probe pins contact the front of the wafer for testing. *Id.* The wafer ATI, used with a cold plate, operates as a system which allows for precise and selective control of temperatures in different parts of the wafer. *Id.*

On November 19, 2020, Plaintiff filed a provisional patent application for the wafter ATI as Provisional App. No. 63/115,813 ("the '813 Provisional"). *Id.* ¶¶ 13, 24. On April 20, 2022, Plaintiff filed a patent application entitled "Wafer Scale Active Thermal Interposer for Device Testing," which issued as U.S. Patent No. 11,674,999 ("the '999

Patent"). *Id.* ¶¶ 1, 25. On June 2, 2025, Plaintiff filed another patent application by the same title, which issued as U.S. Patent No. 12,320,841 ("the '841 Patent,") (collectively with the '999 Patent, "the Asserted Patents"). *Id.* ¶¶ 1, 31. Plaintiff states that both the '999 Patent and the '841 Patent claim priority to the '831 Provisional, and are entitled to the filing date of the '831 Provisional. *Id.* ¶¶ 24, 30, 35.

Plaintiff states that the wafer ATI technology involved in these patents was developed under the leadership of Samer Kabbani, a former Advantest executive who was later hired by Defendants. *Id.* ¶¶ 13, 19, 23. Kabbani worked for Plaintiff from 2019 to 2021 as the Executive Vice President of Business Development, and oversaw the development of Plaintiff's thermal products, including ATIs. *Id.* ¶ 13. Plaintiff states that Kabbani proposed the development of the wafer ATI in late 2019, led the project to develop the technology, performed market research, presented the project to internal stakeholders, and began the process of commercializing the technology. *Id.* ¶¶ 17-21. Kabbani was placed on administrative leave after an internal investigation revealed he had improperly directed Plaintiff's supply contracts towards a company he owned called Lattice. *Id.* Kabbani's administrative leave and employment ended when he was hired by Defendants. *Id.* ¶¶ 22, 23. Defendants also purchased Lattice, which Plaintiff alleges they did to gain access to Plaintiff's technology. *Id.* ¶ 23.

In 2024, Defendants were issued four patents and two applications for a thermal control wafer ("TCW") which Plaintiff alleges copy the details of Plaintiff's wafer ATI. *Id.* ¶ 38. Plaintiff alleges that these patents also describe a ceramic wafer with embedded heaters and temperature sensors divided into multiple thermal zones which works with a cold plate to selectively control the temperatures of thermal zones of a wafer. *Id.* ¶ 40. AEM advertised this technology within the industry as having the "potential to redefine wafer thermal control during probe." *Id.* ¶ 42. Plaintiff states that it has not been able to access one of these products to directly analyze it due to constraints in the secretive semiconductor test industry. *Id.* ¶ 43.

3:25-cv-2604-JES-BJW

Plaintiff brings two claims of patent infringement under 35 U.S.C. § 271(a), one for the '999 patent and the other for the '841 patent, alleging, direct, indirect, and contributory infringement on its patents. *Id.* ¶¶ 46-73.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) for failure to state a claim tests the legal sufficiency of a plaintiff's claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When considering the motion, the court must accept as true all well-pleaded factual allegations in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court need not accept as true legal conclusions cast as factual allegations. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient).

A complaint must "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To survive a motion to dismiss, a complaint must include non-conclusory factual content. *Id.* at 555; *Iqbal*, 556 U.S. at 679. The facts and the reasonable inferences drawn from those facts must show a plausible—not just a possible—claim for relief. *Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 679; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The focus is on the complaint, as opposed to any new facts alleged in, for example, the opposition to a defendant's motion to dismiss. *See Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), *reversed and remanded on other grounds as stated in* 345 F.3d 716 (9th Cir. 2003). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss*, 572 F.3d at 969.

//

//

3:25-cv-2604-JES-BJW

## B. Leave to Amend

When a court dismisses a claim, it must then decide whether to grant the plaintiff leave to amend. A district court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). The court considers factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party[,] and futility of the proposed amendment." *See Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007).

## III.    DISCUSSION

## A. Direct Infringement Claims

Defendants argue that Plaintiff fails to allege domestic acts of infringement as required by section 271(a). Mot. at 16. The Court agrees, and thus declines to address Defendants' remaining arguments regarding the direct infringement claims.

"It is well-established that the reach of section 271(a) is limited to infringing activities that occur within the United States." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1375 (Fed. Cir. 2005). "To determine whether the defendant has made an offer to sell within the United States, we look to the location of the contemplated sale, not the location of the offer." *Sound N Light Animatronics Co., LTD v. Cloud b, Inc.*, No. CV 16-05271-GHK (JPRx), 2016 WL 7635950, at *4 (C.D. Cal. Nov. 10, 2016) (internal quotation omitted, cleaned up). Plaintiffs must plausibly allege some activity occurring in this country, such as an offer directed at U.S. residents or sales or production within the U.S. *Id.* Claims under section 271(a) that do not allege non-conclusory facts showing activity in the U.S. are subject to dismissal. *Id.* at *5.

Here, the Complaint alleges that Defendants are making, using, selling, offering for sale, and/or importing the accused products into the United States. Compl. ¶¶ 48, 62. As

this allegation is an element of Plaintiff's claim, it is conclusory and not entitled to the presumption of truth. *See Twombly*, 550 U.S. at 555. Plaintiff also points to Defendants' U.S. patent filings, the presence of a U.S. company and CEO, and industry reports that Defendant was marketing a wafer ATI product to show domestic acts. Opp'n at 22 (citing Compl. ¶¶ 5, 23, 42, 44). However, as Defendants point out, Defendants are global companies that create, market, and sell products in places other than the U.S. Reply at 5. Similarly, while the Court may consider Defendants' patent applications in adjudicating these claims, the existence of a patent application alone is insufficient to allege an infringing act. *See Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1547 (Fed. Cir. 1995) ("There is no requirement in this country that a patentee make, use, or sell its patented invention."); *Forest Labs., Inc. v. Abbott Labs.*, 239 F.3d 1305, 1313 (Fed. Cir. 2001) (holding that the plaintiff needed to present evidence as to an accused product, not merely a patent application "that may or may not describe the product."). Thus, like in *Sound N Light*, Plaintiffs do not allege non-conclusory facts showing advertisement, sale, or development within this country, and have not stated a claim for direct infringement under section 271(a). *See* Compl.; 2016 WL 7635950, at *5. The motion to dismiss is **GRANTED**.

At the hearing on this motion, Plaintiff stated that it would be able to allege domestic acts as required by section 271(a) if granted leave to amend. The Court thus finds that leave to amend would not be futile. The Court **GRANTS** Plaintiff leave to file an amended complaint in accordance with this order.

### B. Induced Infringement and Contributory Infringement Claims

To show induced infringement, "the patentee must show, first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1353–54 (Fed. Cir. 2008). Contributory infringement similarly requires a showing of direct infringement. *Anticancer, Inc. v. Leica Microsystems, Inc.*, No. 11CV2756 DMS (JMA), 2012 WL 12862585, at *4 (S.D. Cal.

3:25-cv-2604-JES-BJW

May 14, 2012). "It is axiomatic that '[t]here can be no inducement or contributory infringement without an underlying act of direct infringement.'" *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012) (quoting *Linear Tech. Corp. v. Impala Linear Corp.,* 379 F.3d 1311, 1326 (Fed. Cir. 2004). "[A] plaintiff need not identify a specific direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists." *Id.* at 1336.

As discussed above, Plaintiff has not plausibly alleged direct infringement under federal pleading standards because Plaintiff has not pled domestic acts of infringement. Nor do Plaintiff's induced and contributory claims allege domestic infringing actions by any other party. *See generally*, Compl. Defendants argue correctly that Plaintiff's induced and contributory infringement claims cannot survive as a result. Mot. at 22-23; *In re Bill of Lading*, 681 F.3d at 1333. The Court thus **GRANTS** Defendants' motion to dismiss these claims, and **GRANTS** Plaintiff leave to amend these claims for the reasons set forth above.

## IV.   CONCLUSION

For the reasons explained above, the Court **GRANTS** Defendant's motion to dismiss. The Court also **GRANTS** Plaintiff leave to amend its complaint in accordance with this order. Plaintiff **SHALL FILE** an amended complaint, if any, no later than **July 20, 2026**.

**IT IS SO ORDERED.**

Dated:  June 29, 2026

Honorable James E. Simmons Jr.
United States District Judge